UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DAVID K. HOSKINS,

                    Plaintiff,

        v.

CMS MEDICAL, CORIZON,
JOHANNA SMITH, BLADES, RONA
SIEGERT, STACY MCGREW, SARA
GOFF, DEBBIE RICHARDSON, LPN
DEANN, DR. MYUNG SONG, SHELL
FISHER, SCOTT ELIASON, AND JILL
WHITTINGTON,

                    Defendants.

Case No. 1:13-cv-00264-EJL

**MEMORANDUM DECISION AND
ORDER**

        Plaintiff David K. Hoskins, a prisoner in the custody of the Idaho Department of

Correction (IDOC), is proceeding pro se and in forma pauperis in this civil rights action.

Currently pending before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6)

(Dkt. 47), filed by Defendants Smith, Siegert, Fisher, and Whittington ("the IDOC

Defendants"). The Court has already determined that the motion to dismiss will be treated

as a motion for summary judgment and has allowed discovery, further briefing, and

submission of evidence. (*See* Dkt. 65.) Defendants Fisher and Siegert have also filed a

separate Motion for Summary Judgment. (Dkt. 79).

**ORDER - 1**

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. D. Idaho L. R. 7.1. Accordingly, the Court enters the following Order granting summary judgment to the IDOC Defendants. Further, the Court concludes on its own motion that the Amended Complaint fails to state a claim upon which relief may be granted with respect to the remaining Defendants. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). As a result, this entire action will be dismissed. The claims against the IDOC Defendants will be dismissed with prejudice; the claims against the remaining Defendants will be dismissed without prejudice.

## PLAINTIFF'S PENDING MOTIONS

The Court has warned Plaintiff—no fewer than three separate times—that he may not file duplicative motions and that he may have no more than three motions pending at any given time. (Dkt. 20 at 10; Dkt. 41 at 2-3; Dkt. 65 at 11-12.) Despite these repeated warnings, Plaintiff has *thirteen* motions currently pending: (1) Motion To Court Clerk To Serve John Burke with Subpoenas for Defendants (Dkt. 66); (2) Motion To Inform Court That Previous Court Order Denied the Defendants' Motion to Dismiss So the Motion for Summary Judgment Should Be Denied as the Same and Motion for Court's Help (Dkt. 68); (3) Motion To Request All Electronic Emails To and About Hoskins from Shell Fisher (Dkt. 70); (4) Request for Production of Documents (Dkt. 72); (5) Motion to Request This Court To Provide a Pro Bono Attorney for Discovery (Dkt. 74); (6) Motion to Have Court's Help in Discovery Process (Dkt. 76); (7) Second Motion To Court Clerk

To Serve John Burke with Subpoenas for Defendants (Dkt. 77); (8) Motion for Leave of Court To Amend Complaint and Dismiss Some Defendants and Add New Corizon Defendants (Dkt. 83); (9) Motion To Compel Corizon John Burke Elam to Provide Requested Addresses of Former Employees (Dkt. 84); (10) Motion for Denying Defendants Summary Judgment (Dkt. 88); (11) Motion for Court to Order Corizon or IDOC To Have Hoskins See a Specialist (Dkt. 89); (12) Motion to Reassign Judge B. Lynn Winmill from This Case (Dkt. 93)[1]; and (13) Pleading to Attorney General's Office to Get All Documents (Dkt. 94).

To the extent that the Court does not address any of Plaintiff's pending motions on the merits, those motions will be stricken as violating the Court's three previous Orders limiting any party to no more than three pending motions at any given time.

**1.      Plaintiff's Motion to Request This Court To Provide a Pro Bono Attorney for Discovery (Dkt. 74)**

Plaintiff seeks the appointment of counsel to assist him in the discovery process. As the Court has previously stated, counsel may be appointed in civil cases only in exceptional circumstances, and whether counsel should be appointed turns on (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). (*See* Dkt. 65 at 2-3.) Here, Plaintiff has not

---

[1] The motion for reassignment is moot, as this action has already been reassigned from Chief Judge Winmill to the undersigned judge. (*See* Dkt. 64.)

established that the Court should reconsider its previous denial of Plaintiff's request for counsel.

Plaintiff has struggled somewhat in articulating his legal positions. But it is clear from Plaintiff's filings that he understands these proceedings enough to act as his own counsel. Although Plaintiff's spelling is unique and phonetic, his arguments are understandable. Moreover, as the Court explains below, Defendants are entitled to judgment as a matter of law, and the Court concludes that additional discovery would not alter the Court's analysis in this regard. Therefore, Plaintiff's claims Plaintiff's request for counsel will be denied.

**2.     Motion To Inform Court That Previous Court Order Denied the Defendants' Motion to Dismiss So the Motion for Summary Judgment Should Be Denied as the Same and Motion for Court's Help (Dkt. 68)**

Plaintiff's has also filed a motion stating that the Court should not be an advocate for the Defendants and appears to claim that because the Court "denied" Defendants' Motion To Dismiss, it may not now consider Defendants' separate Motion for Summary Judgment.

The Court is not acting as an advocate and has no stake in this litigation. Indeed, the Court has endeavored to explain the litigation process to Plaintiff several times, and despite the Court's numerous warnings, Plaintiff has continued to violate the Court's orders and has had many motions stricken. Notwithstanding those violations, the Court has decided not to sanction Plaintiff. Any disadvantage Plaintiff may feel in this litigation

**ORDER - 4**

is a natural result of his status as an incarcerated pro se litigant and his failure to follow the Court's orders; it cannot be laid at the Court's feet.

To the extent Plaintiff argues that the Court's previous discussion regarding Defendants' Motion to Dismiss prohibits the Court from considering the Motion for Summary Judgment, the Court will construe the motion as part of Plaintiff's response to the Motion for Summary Judgment.

Plaintiff's analysis on this issue is incorrect. The Court did not deny the Motion to Dismiss; instead, the Court elected to treat the motion as one for summary judgment, which is appropriate under Federal Rule of Civil Procedure 12(d). (Dkt. 65.)

3. **Motion To Request All Electronic Emails To and About Hoskins (Dkt. 70) and Request for Production of Documents (Dkt. 72)**

These two motions are essentially discovery requests, which—as the Court previously informed Plaintiff—should not be filed with the Court. (Dkt. 65.) Thus, these Motions will be denied.

4. **Plaintiff's Motion for Denying Defendants Summary Judgment (Dkt. 88)**

The Court construes this motion as a response to the IDOC Defendants' motion for summary judgment. The Court has considered Plaintiff's arguments in this document, along with all of the parties' submissions in this case.

## IDOC DEFENDANTS' MOTION TO DISMISS and
## MOTION FOR SUMMARY JUDGMENT

**1. Factual Background**

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

Plaintiff's Amended Complaint alleges that Plaintiff suffers from severe back pain, depression, bipolar disorder, and obsessive compulsive disorder, that he is intellectually disabled,[2] and that he has a low I.Q.[3] (Am. Compl., Dkt. 11, at 6.) Plaintiff seeks to be housed in the Behavioral Health Unit ("BHU") of the Idaho State Correctional Institution. He claims that his back injury and mental illnesses are better managed in the BHU.

---

[2] The Court notes that not all of Plaintiff's medical providers agree with Plaintiff's statement that he is intellectually disabled. According to one such provider, "although [Plaintiff's] IQ may be borderline[,] his adaptive functioning skills appear adequate." (Lodged Medical Records, Dkt. 57, Dr. Scott Eliason's Psychiatric Progress Note, dated April 19, 2012.) This disagreement is not relevant to the pending motions because (1) the Court will assume the truth of Plaintiff's allegation of intellectual disability, and (2) the Amended Complaint does not take issue with Plaintiff's specific treatment for his intellectual disability.

[3] In addition to the medical records submitted by the parties for purposes of summary judgment proceedings, the Court has independently reviewed Plaintiff's entire medical record as of February 4, 2014, which was submitted by Defendants on that date.

Plaintiff has both threatened and attempted suicide in the past and has been in and out of suicide watch cells multiple times. In 2012, prison guards had to cut Plaintiff down after he was "found [hanging] in his cell with a scrub shirt wrapped around his neck." (April 19, 2012 Report from St. Alphonsus Regional Medical Center, Dkt. 58-4 at 1.) Plaintiff has also been found making weapons in his cell to attempt to harm himself. (Lodged Medical Records, Dkt. 57, L. Watson's Clinical Contact Note, dated April 18, 2012.) The Amended Complaint does not allege that any specific actions of the current Defendants contributed to any suicide attempt or any decision to make a weapon for that purpose.

Plaintiff's severe back pain has been caused by a disc herniation and a disc fragment impinging on a nerve root. Plaintiff, while incarcerated, underwent back surgery in 2010, during which the surgeon performed a hemilaminectomy and microdiscectomy. In January 2012, the surgeon recommended an additional surgery to treat Plaintiff's pain. (Affidavit of Joseph Cardona ("Cardona Aff."), Dkt. 79-3 at ¶ 5 and Ex. A.) Plaintiff initially agreed, then declined, to have the surgery. The surgeon noted that Plaintiff's symptoms were stable and that his pain was manageable. (*Id.* at Ex. B.)

After another doctor later recommended that Plaintiff have surgery, Plaintiff decided that he would prefer to wait on any surgery until he was released from prison. It is undisputed that Plaintiff has refused surgery to permanently fix his back pain and that

Plaintiff and his doctor "agreed to a medication plan that would help him manage his pain until he was released from prison." (*Id*. at ¶ 6 and Ex. C.)

Plaintiff alleges in his Amended Complaint that Defendant Siegert, a registered nurse and the IDOC Healthcare Services Director, did not ensure that Plaintiff received an MRI. (Am. Compl. at 3-4.) However, Plaintiff's medical records reveal that he has, in fact, undergone *three* MRIs to diagnose his back problems while in custody. (Cardona Aff. at ¶ 7 at Ex. E, F, and G.) Plaintiff does not appear to dispute the accuracy of these records.

With respect to Defendant Johanna Smith, the former warden, Plaintiff alleges that she knew about Plaintiff's medical problems and did not help him. Plaintiff claims generally that Defendant Smith "took advantage of [Plaintiff's] inability and disability and low IQ,"[4] but does not elaborate on any particular action taken by Defendant Smith, other than denying the administrative grievances that Plaintiff submitted with respect to his medical care. (Am. Compl. at 3.)

Plaintiff alleges that Defendant Fisher knew that Plaintiff suffers from pain, depression, bipolar disorder, dyslexia, low IQ, and obsessive compulsive disorder, yet "neglect[ed] to provide [Plaintiff] the proper accommodations." (*Id*. at 6.) Plaintiff does

---

[4]  Because Plaintiff spells phonetically, the Court has regularized the spelling when quoting from the Amended Complaint.

**ORDER - 8**

not allege that Defendant Fisher is personally involved in Plaintiff's medical care, only that she knew of his medical and mental health issues and therefore should have transferred him to the BHU.

As to Defendant Whittington, the grievance coordinator for the IDOC, Plaintiff claims that Whittington did not appropriately process Plaintiff's medical grievances because she would respond to grievances by stating that the issue had already been addressed. (*Id*. at 7.)

Plaintiff asserts that Defendants McGrew and L.P.N. Deann "went in to the doctor's office telling . . . [Defendant] Doctor Song that [Plaintiff] is faking and drug seeking, don't do anything for him." (*Id*. at 4.) Plaintiff states that he told Defendant Siegert about this incident but that Siegert took no action. (*Id*.)

Defendant Sara Goff allegedly interfered with one of Plaintiff's concern forms by stating "her own opinion on what she thought would service her needs." (*Id*. at 5.)

Plaintiff also contends that Defendant Dr. Eliason discontinued Plaintiff's pain medication "cold turkey" and that this caused Plaintiff to become suicidal. (*Id*. at 7.)

## 2.     Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is

not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must

direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte

provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (citation and internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

### 3. Standard of Law Applicable to Plaintiff's Eighth Amendment Claims

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To succeed on a claim under § 1983, a plaintiff must establish a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

Plaintiff asserts claims under the Eighth Amendment to the United States Constitution, which protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in
> further significant injury or the unnecessary and wanton
> infliction of pain[;] . . . [t]he existence of an injury that a
> reasonable doctor or patient would find important and worthy
> of comment or treatment; the presence of a medical condition
> that significantly affects an individual's daily activities; or the
> existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

(en banc).

As to the subjective standard, a prison official or prison medical provider acts with

"deliberate indifference . . . only if the [prison official] knows of and disregards an

excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.,* 290 F.3d

1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this

standard, the prison official must not only 'be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists,' but that person 'must also

draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

*Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the

[official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*,

290 F.3d at 1188 (citation omitted). However, "whether a prison official had the requisite

knowledge of a substantial risk is a question of fact subject to demonstration in the usual

ways, including inference from circumstantial evidence, . . . and a factfinder may

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm).

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986; *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of

health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," the Eighth Amendment is satisfied. *Toguchi*, 391 F.3d at 1061.

**4.      Discussion**

Plaintiff's Amended Complaint and the evidence before the Court shows that although Plaintiff suffers from serious medical and mental health problems, his continuing health care satisfies the Eighth Amendment. The evidence also shows that Plaintiff himself refused to have a subsequent back surgery recommended by more than one of his doctors. Plaintiff cannot be heard to complain about his medical providers if he chooses not to follow the treatment recommendations of those providers. Moreover, the record establishes, at most, that Plaintiff merely disagrees with his medical and mental health providers about whether he should be housed in the BHU—a disagreement that is not actionable under § 1983. *Sanchez*, 891 F.2d at 242.

The Court will discuss Plaintiff's specific claims against each Defendant below.

**A.      *Defendant Smith***

Plaintiff's only allegations against Defendant Smith are that she was "notified of the issues but failed to correct the problems . . . and therefore amounts to [sic] an 8th Amendment violation," and that Smith was made aware of Plaintiff's problems "by all of the administrat[ive] grievances Hoskins had in the system" yet did nothing to help. (Am. Compl., Dkt. 11, at 3.) Plaintiff faults Defendant Smith for failing to ensure that he was transferred to the BHU.

However, these allegations do not plausibly suggest that former warden Smith subjectively knew that Plaintiff was in a substantial risk of serious injury or that his medical treatment plan was substandard. There is certainly no evidence in the record to support such a claim. That Defendant Smith may have known that Plaintiff suffers from medical and mental health problems does not establish that she acted with deliberate indifference in not transferring him to the BHU.

As an official without a medical background, Defendant Smith was entitled to rely on the medical judgment of Plaintiff's health care providers. Plaintiff's medical records show that Plaintiff was receiving ongoing medical and mental health care, which was deemed appropriate by his medical providers, and that Plaintiff's latest problems did not require that he be transferred to the BHU. (Lodged Medical Records, Dkt. 57.) *See Snow*, 681 F.3d at 986. Included in those records are several health care providers' opinions that Plaintiff's threats of self-harm have, at least some of the time, been attempts to manipulate his way into the BHU. (Lodged Medical Records, Dkt. 57.) There is simply nothing in the record to support an inference that a reasonable person in Defendant Smith's position would have questioned the conclusions and treatment decisions—including the consistent decisions that a transfer to the BHU was not medically necessary—of Plaintiff's doctors and other health care providers. Thus, Defendant Smith is entitled to judgment as a matter of law on Plaintiff's claims against her.

**B.** *Defendant Siegert*

Plaintiff claims that Defendant Siegert knew that his injuries were better handled in the BHU yet did not ensure his transfer there. (Am. Compl. at 4.) As with Defendant Smith, this allegation does not support an inference that Siegert was aware of a substantial risk to Plaintiff's health yet deliberately disregarded that risk. Siegert was not personally involved in Plaintiff's medical care, and there is no evidence to support an inference that she is subject to supervisory liability. *See Starr*, 652 F.3d at 1207-08.

Plaintiff also alleges that Defendant Siegert failed to instruct medical providers to perform an MRI on Plaintiff. As noted above, however, Plaintiff's medical records definitively show that he has received at least three MRIs for his back injury. Plaintiff has not disputed the accuracy of these records. Therefore, Plaintiff's claim against Defendant Siegert has no factual basis.

**C.** *Defendant Fisher*

Plaintiff claims that Defendant Fisher knew that Plaintiff suffers from mental illness yet neglected to provide Plaintiff with "the proper accommodation of living area." (Am. Compl. at 7.) Again, this allegation is insufficient to allow any reasonable factfinder to conclude that Fisher subjectively knew of a substantial risk of serious harm to Plaintiff's mental health if Plaintiff were not transferred to the BHU, particularly given that several providers have, at times, concluded that Plaintiff's threats of self-harm are not always genuine but instead are attempts to manipulate his placement in the BHU.

**ORDER - 20**

(Lodged Medical Records, Dkt. 57.) Defendant Fisher noted in April 2012 that Plaintiff told Fisher "he misses his friends" in the BHU, which could have been a reason for attempting to be transferred by threatening to harm himself. (Lodged Medical Records, Dkt. 57, Shell Wamble-Fisher's Suicide Risk Assessment, p.1, dated April 21, 2012.) At bottom, there is no evidence in the record that Defendant Fisher deliberately disregarded a substantial risk of harm to Plaintiff in not transferring him to the BHU. Thus, Plaintiff's claims against Defendant Fisher fail.

### D.    *Defendant Whittington*

Plaintiff's only allegation against Defendant Whittington is that she did not appropriately respond to his grievances about his medical and mental health care. However, it is well-established that "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). As one court has explained, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Where the defendants' "only roles in [a civil rights] action involve the denial of administrative grievances . . . they cannot be liable under § 1983." *Id*. Thus, Defendant Whittington—like all the IDOC Defendants—is entitled to judgment as a matter of law.

### E.    *The Remaining Defendants*

In a previous Order, the Court allowed Plaintiff to proceed on his claims against Defendants Eliason, McGrew, Goff, Richardson, L.P.N. Deann, and Dr. Song because it appeared, at that early stage of proceedings, that Plaintiff might be able to state a claim

for relief. (Dkt. 20.) However, upon further review, the Court has determined that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted against these Defendants. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that[] . . . the action . . . fails to state a claim upon which relief may be granted[.]").

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted). For the following reasons, the Court concludes that the Amended Complaint does not meet these standards with respect to the claims against the remaining Defendants.

i.     Defendant Eliason

Plaintiff contends that Defendant Dr. Eliason discontinued Plaintiff's pain medication "cold turkey" and that this caused Plaintiff to become suicidal. (Am. Compl. at 7.) But these allegations do not support a plausible inference that Defendant Eliason

acted with deliberate indifference. Rather, it shows at most either (1) a mere disagreement between Plaintiff and Dr. Eliason with respect to Plaintiff's medical treatment, or (2) mere negligence—neither of which is actionable under § 1983. *See Sanchez*, 891 F.2d at 242; *Broughton*, 622 F.2d at 460. Therefore, the Amended Complaint fails to state a claim upon which relief may be granted as against Defendant Eliason.[5]

ii.     The Unserved Defendants: McGrew, Deann, Song, Goff, and Richardson

Defendants McGrew, Deann, Song, Goff, and Richardson have not yet been served in this action. However, the Court has determined that Plaintiff's claims against them must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's only specific allegations against Defendants McGrew, L.P.N. Deann, and Dr. Song are that McGrew and Deann "went in to the doctor's office telling . . . doctor Song that [Plaintiff] is faking and drug seeking, don't do anything for him." (Am. Compl. at 4-5.) The Court cannot plausibly infer from this allegation that any of these three defendants acted with the subjective intent required to state a colorable Eighth Amendment claim.

---

[5] The Court notes that Plaintiff's medical records contain evidence that Dr. Eliason did not, in fact, take Plaintiff off of his pain medication "cold turkey," but rather that he "tapered" the medication off over two weeks. (*See, e.g.*, Lodged Medical Records, Dkt. 57, S. Martin's Suicide Risk Assessment, p.3, dated July 7, 2012.) The Court does not rely on this evidence, however, because it concludes that Plaintiff has failed to meet the pleading standards for an Eighth Amendment claim against Dr. Eliason. *See Iqbal*, 556 U.S. at 678; 28 U.S.C. § 1915(e)(2)(B)(ii).

Though it *might* be true that McGrew and Deann were being untruthful when they told Dr. Song they believed Plaintiff was only seeking drugs, the "obvious alternative explanation" is that McGrew and Deann honestly believed, based on their training and their interactions with Plaintiff, that he was not truly in pain on that particular occasion in question but was only seeking narcotics. *Iqbal*, 556 U.S. at 682. Further, there is nothing in the Amended Complaint to suggest that Dr. Song acted on the opinions of McGrew and Deann or, if she did, that Dr. Song was subjectively aware of a substantial risk of serious harm to Plaintiff yet deliberately disregarded that risk. Plaintiff's only allegation against Dr. Song is that she no longer works at the prison "after the incident" involving McGrew and Deann. (Am. Compl. at 6.) Therefore, the Amended Complaint does not plausibly allege that these three Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

Plaintiff claims that Defendant Goff answered some of Plaintiff's concern forms, interjecting her "own opinion" on the issues therein. He also alleges that Defendant Richardson did not respond to concern forms or grievances in an appropriate manner. (Am. Compl. at 5.) Plaintiff's claims against these Defendants fail for the same reason as his claims against Defendant Whittington—handling a concern form or a grievance in a way that is not satisfactory to an inmate is simply not actionable under § 1983. Although improperly processing an inmate's grievance may excuse the inmate's failure to exhaust the prison's grievance system before filing a civil rights lawsuit, it does not give rise to an independent constitutional claim. *See Mann*, 855 F.2d at 640; *Shehee*, 199 F.3d at 300.

For these reasons, the Amended Complaint fails to state a claim upon which relief may be granted with respect to Defendants McGrew, Deann, Song, Goff, and Richardson, none of whom have yet been served. Accordingly, Plaintiff's requests for information on the service addresses of these Defendants will be deemed moot.

## CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's Amended Complaint. Plaintiff's claims against Defendants Smith, Siegert, Fisher, and Whittington will be dismissed with prejudice. His claims against the remaining Defendants will be dismissed without prejudice.

## ORDER

**IT IS ORDERED:**

1.    The IDOC Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 47), treated as a Motion for Summary Judgment, is GRANTED.

2.    Defendants Fisher's and Siegert's Motion for Summary Judgment (Dkt. 79) is GRANTED.

3.    Plaintiff's Motion to Request This Court To Provide a Pro Bono Attorney for Discovery (Dkt. 74) is DENIED.

4.    Plaintiff's Motion To Court Clerk To Serve John Burke with Subpoenas for Defendants (Dkt. 66) is MOOT.

5.    Plaintiff's Second Motion To Court Clerk To Serve John Burke with Subpoenas for Defendants (Dkt. 77) is MOOT.

6.     Plaintiff's Motion To Compel Corizon John Burke Elam to Provide Requested Addresses of Former Employees (Dkt. 84) is MOOT.

7.     Plaintiff's Motion To Inform Court That Previous Court Order Denied the Defendants' Motion to Dismiss So the Motion for Summary Judgment Should Be Denied as the Same and Motion for Court's Help (Dkt. 68) is NOTED.

8.     Plaintiff's Motion for Denying Defendants Summary Judgment (Dkt. 88) is NOTED.

9.     Plaintiff's Motion to Reassign Judge B. Lynn Winmill from This Case (Dkt. 93) is MOOT.

10.    Plaintiff's Motion To Request All Electronic Emails To and About Hoskins from Shell Fisher (Dkt. 70) is DENIED.

11.    Plaintiff's Request for Production of Documents (Dkt. 72) is DENIED.

12.    Plaintiff's Motion to Have Court's Help in Discovery Process (Dkt. 76) is STRICKEN.

13.    Plaintiff's Motion for Leave of Court To Amend Complaint and Dismiss Some Defendants and Add New Corizon Defendants (Dkt. 83) is STRICKEN.

14.    Plaintiff's Motion for Court to Order Corizon or IDOC To Have Hoskins See a Specialist (Dkt. 89) is STRICKEN.

15. Plaintiff's Pleading to Attorney General's Office to Get All Documents (Dkt. 94) is STRICKEN.

16. This entire action is dismissed. All claims against Defendants Smith, Siegert, Fisher, and Whittington are DISMISSED with prejudice. All claims against the remaining Defendants are DISMISSED without prejudice.

DATED: **August 15, 2014**

Honorable Edward J. Lodge
U. S. District Judge